1          UNITED STATES DISTRICT COURT

2         NORTHERN DISTRICT OF CALIFORNIA

3   Before The Honorable Charles R. Breyer, Judge

4   UNITED STATES OF AMERICA,        )
                                     )
5              Plaintiff,            )
                                     )
6     VS.                            ) **NO. C15-366**
                                     )
7   VICENTE EDUARDO GARCIA,          )
                                     )
8              Defendant.            )
    _____ )

9
                              San Francisco, California
10                            Wednesday, December 16, 2015

11              **TRANSCRIPT OF PROCEEDINGS**

12  **APPEARANCES:**

13  For Plaintiff:
                         MELINDA HAAG
14                       United States Attorney
                         450 Golden Gate Avenue
15                       San Francisco, California  94102
                    BY:  **ADAM A. REEVES**
16                       **ASSISTANT UNITED STATES ATTORNEY**

17  For Defendant:
                         Ramsey & Ehrlich LLP
18                       803 Hearst Avenue
                         Berkeley, California 94710
19                  BY:  **ISMAIL JOMO RAMSEY,  ATTORNEY AT LAW**
                         **FERNANDO TAMAYO, ATTORNEY AT LAW**
20                       **KENDALL COFFEY, ATTORNEY AT LAW**

21


22  Reported By:  Lori Stokes CSR No. 12732, RPR
                         Pro Tem Reporter
23


24


25

1   <u>**Wednesday - December 16, 2015**</u>                 **<u>4:25 p.m.</u>**

2                  <u>**P R O C E E D I N G S**</u>

3                        **---oOo---**

4

5         **THE CLERK:**  15-cr-366, U.S.A. versus Vicente Eduardo

6 Garcia.

7     Counsel, please state your appearances.

8         **MR. REEVES:**  Adam Reeves for the United States.

9 Good afternoon, Your Honor.

10         **MR. RAMSEY:**  Good afternoon, Your Honor.  Ismail

11 Ramsey on behalf of Vicente Garcia, who is present and out of

12 custody.

13     Also appearing on behalf of Mr. Garcia pro hac vice with

14 me, and they've been admitted -- as I said, they've been

15 admitted to this court pro hac vice is Kendall Coffey and

16 Fernando Tamayo, both from Miami, Florida.

17     I would also point out to the Court, Your Honor, we

18 intended to have -- to split the time and the argument between

19 myself and Mr. Coffey.  Mr. Coffey was going to discuss issues

20 related to Mr. Garcia's personal history.  I don't believe that

21 the Government objects to that division, if it is acceptable to

22 the Court.

23         **THE PROBATION OFFICER:**  Good afternoon, Your Honor,

24 Jill Spitalieri, probation.

25         **THE COURT:**  Good afternoon.  Let me take a moment.

1    Let me take a 15-minute recess.  I want to meet with the

2    probation office.

3                    (Recess taken at 4:26 p.m.)

4                    (Proceedings resumed at 4:40 p.m.)

5              **THE COURT:**  Okay.  This is the sentencing of

6    Mr. Garcia.  The appearances have been noted.  I have read the

7    various reports that have been prepared.  I wanted to ask the

8    defense, first of all, have you had an opportunity to review

9    the presentence report with your client?

10             **MR. RAMSEY:**  Yes, Your Honor.

11             **THE COURT:**  And are there any additions, corrections

12   or amendments?

13             **MR. RAMSEY:**  We only had the one objection,

14   Your Honor, that was noted that was not resolved, which was --

15             **THE COURT:**  And that was paragraph 20?

16             **MR. RAMSEY:**  Yes, Your Honor.

17             **THE COURT:**  Well, here is my view of that:  This

18   paragraph and its allegations don't affect the sentencing

19   guideline calculation.  And I will go further to say that it

20   won't impact my decision on sentencing.

21      Therefore, your objections are overruled.  It can be

22   included in the report, but I'm not going to rely, either

23   directly or indirectly, on paragraph 20.

24             **MR. RAMSEY:**  Thank you, Your Honor.

25             **THE COURT:**  So the -- let me make some observations

1    so we know where we're coming from in this.  The sentencing

2    guideline range -- pardon me.

3         The total offense level is 31, criminal history category

4    is 1.  There is, of course, a 5-year, 60-month statutory cap.

5    So that it's a total offense level 31.  I don't have my -- the

6    total offense level of 31, Mr. Reeves?

7              **MR. REEVES:**  Yes, it is.  The resulting range is 108

8    months to 135 months, Your Honor.

9              **THE COURT:**  Yeah.  So it's not that it's irrelevant;

10   it is that it's trumped by the statute, and that's the maximum

11   the Court could impose under the statute.

12        As I understand the position of the parties, the probation

13   office has recommended a sentence of 42 months on a variance;

14   the defense has recommended probation, home confinement and

15   community service; and the Government's view is -- is it other

16   than -- do you have a number, or do you simply leave it to the

17   Court to decide what -- where we are on this?

18             **MR. REEVES:**  Your Honor, the Government is

19   recommending that there be a prison sentence.

20             **THE COURT:**  Okay.

21             **MR. REEVES:**  But we are not recommending a specific

22   duration of that sentence.

23             **THE COURT:**  All right.  Okay.

24        Now, let me -- so that's sort of the position of the

25   parties.  Let me make a further observation, and then I will --

1    I'll have some discussion of it.

2         The way I view it is, while the amount of money is a lot

3    in terms of the loss calculation, the fact of the matter is

4    that the -- that Mr. Garcia only benefited -- when I say only,

5    he benefited to the extent of approximately $86,000.  That was

6    his gain, as I understand it, in this transaction.

7         And therefore, I look upon that as a significant factor in

8    terms of an appropriate sentencing guideline calculation.  Even

9    though one can argue that the correct analysis is the 31, 1, I

10   think as a basis of a variance, I would look at it in terms of

11   a loss of $86,000, which is the gain.  And as I understand it,

12   if that calculation was inserted rather than the loss figure

13   that was presented to the Court, that the offense level --

14   adjusted offense level would be 21, criminal history category 1

15   with a sentencing guideline range of 37 to 46 months.

16        So if you -- yes, Mr. Ramsey?

17        **MR. RAMSEY:**  I would just note that I agree with

18   that calculation under the 2C1.1 guideline.  If we used the

19   2B1.1 guideline for general fraud, the base offense level would

20   change, and it would reduce -- the base offense level would

21   reduce from 12 to 6.  So there would be a six-level difference.

22        **THE COURT:**  Well, wait a minute.  I better follow

23   you on this one.

24        You're saying I shouldn't use 2B1.1?

25        **MR. RAMSEY:**  I'm saying if we did use 2B1.1, 21

1   would not be the resulting offense level.  Under 2B1.1, we

2   would have six plus eight -- sorry.

3           THE COURT:  You're now referring to the fact that --

4           MR. RAMSEY:  I'm sorry, 6.6.  Sorry.

5           THE COURT:  You're referring to the fact that the

6   sentencing guidelines have been amended?

7           MR. RAMSEY:  I don't think so.  I think --

8           MR. REEVES:  I think, if I understand the argument,

9   if I could offer this perspective:  Mr. Reeves is suggesting

10  that the correct guideline is 2B1.1 under the Court's analysis.

11      I'm just offering this so that there's no

12  miscommunication.  I think the correct guideline is 2C1.1, but

13  when you look to the gain, as the Court wanted to do, you are

14  then directed pursuant to 2C1.1(b)(2) to look at the loss

15  calculation in --

16          THE COURT:  So that would be -- the loss

17  calculation, you would add eight; is that right?

18          MR. REEVES:  I think the Court is correct that if

19  you use the gain to Mr. Garcia, the resulting adjusted --

20  excuse me -- total offense level is 21, and the range is 37 to

21  46 months.

22          THE COURT:  That's what I did.

23          THE PROBATION OFFICER:  You're right.

24          MR. REEVES:  I think Mr. Ramsey is suggesting --

25          THE COURT:  I need to understand Mr. Ramsey's

1    argument, which I don't understand.

2             **MR. RAMSEY:**  If you use the 2C1.1 guideline, the

3    Court is correct.  It would be a base offense level of 12, plus

4    you would add 6 for more than a $40,000 loss, and then plus 2

5    for multiple bribes plus 4 for a high-level government

6    official.  That would give you 24 minus 3.

7         What I was indicating was that if we did use the 2B1.1

8    guideline for general fraud, if we were talking about the sense

9    of the gain to him -- and I understand this is, you know, a

10   different guideline than --

11            **THE COURT:**  But I think the right one is 2C1.1.

12            **MR. RAMSEY:**  Fair, Your Honor.

13            **THE COURT:**  Okay.  So that's where -- I know it

14   would be a variance, but that's where my frame of reference

15   starts.

16        And, of course, that's what we're supposed to do.  We're

17   supposed to calculate a guideline, use it as an anchor and --

18   anyway, there I am.

19        So I think there are a couple of things I could note, as

20   well, reading through all of this, is that Mr. Garcia has led

21   an exemplary life; he's led an unselfish life.  He has

22   contributed a lot to the community, to his family, here and

23   abroad.

24        He has -- other than this episode, and I guess series of

25   episodes, there's nothing that one can point to in his life

1  that suggests that he hasn't led a -- an unselfish, altruistic

2  life.

3      He's enjoyed the benefits of success, but that's not to be

4  held against anyone.  It's part of the reward for working hard.

5  He has worked very hard.

6      So I see it in that context.  I've read these letters in

7  support and so forth, but of course, I don't want to cut anyone

8  short here, and I'll listen to whatever you want to say.

9      **MR. RAMSEY:**  Your Honor, the first thing we would

10  like to talk about is the cooperation that took place in this

11  case.

12      Mr. Garcia, when he was approached by federal agents,

13  readily fessed up to what he did.  There was no attempt to try

14  to avoid responsibility for it.  He accepted responsibility, he

15  gave them a written statement and agreed to cooperate in any

16  way he could.

17      Then, over the course of the next few months, as he

18  retained counsel and so forth, he worked hard with the

19  Government to cooperate.  I think the Government has indicated

20  that in their sentencing memorandum.

21      He reviewed documents to help explain an international

22  multi-co-conspirator bribery scheme.  He reviewed documents

23  from the Government.

24      He did that before entering an actual plea agreement, he

25  did that under a proffer agreement, which obviously had some

1   limited protection, and then he did that after entering a

2   cooperation agreement, in which, of course, the Government at

3   its sole discretion can decide whether or not to move for a

4   5K1.

5       He did all that he could.  There are unique situations

6   here, I think, which the Government would acknowledge makes it

7   difficult to bring cases against individuals in Panama who are

8   in another country.

9       It's difficult, I believe, for the Government to get

10  cooperation with foreign governments when those governments

11  themselves may be implicated in some of these actions.

12      I think by no fault of Mr. Garcia's -- of his own, was his

13  cooperation did not lead to prosecution of others.  But the

14  reality is that there are other factors at play that have, but

15  it doesn't change the amount of his cooperation.

16      And I would also say that ordinarily in a white collar

17  case, you don't talk about endangering your own personal safety

18  or that of your family in cooperating, you obviously hear about

19  that more in gang cases or violent crimes.

20      But this is a case where I think there were some serious

21  individuals who were involved in the other country, and there

22  have been people who have lost their lives in somewhat

23  suspicious circumstances.  I'll use the example of a gentleman

24  who -- I'll put in quotes -- fell off a balcony.  But I do

25  think it has been with some personal risk to himself.

1   His cooperation met many of the factors, I would say, four

2   of the five factors, that are considered under 5K1.  He was

3   complete.  He was timely.  I think it was useful.  And like I

4   said, it was at risk to himself.  Really the only factor that's

5   not present is that there was no prosecution of another.

6   Understanding that -- and I understand that it's fully

7   within the Government's discretion -- that was the agreement

8   about whether there would be a 5K1.  I do think it is unique in

9   the circumstances that there's not.

10   I do believe, as the Government has indicated, that the

11   cooperation should still be considered, and that it should be

12   considered under 3553(a) factors.

13   And I think they are strong here.  I think these are the

14   kind of offenses that we do want executives to assist the

15   Government to unwind these, to understand what happened in the

16   offenses and to, in any way they can, help prosecute cases.

17   And Mr. Garcia has worked hard to do that.  And he's made

18   himself available.

19   And through no fault of his own, there is no prosecution,

20   and that leaves us in an unusual situation where, after a

21   pre-plea proffer and then a cooperation agreement, despite a

22   full cooperation, complete and truthful cooperation, we're not

23   in a position for a 5K1.

24   And I understand that's where we are, but I think the

25   Court should consider some de facto cooperation or sentence to

1   really consider this seriously under 3553(a).  And that is, you

2   know, one of the significant factors that leads us to our

3   recommendation.

4       And I know in white collar cases, it's extremely important

5   to have general deterrence.  There are not a lot of these cases

6   that come to light, and it often doesn't take much of a prison

7   or jail sentence to deter other individuals.

8       But the flip side of that is that, in those cases, we also

9   want to make sure that people do what Mr. Garcia did, and

10  that's fess up to what they did and to work hard, to cooperate,

11  to try to unravel these cases, and to try to build cases

12  against individuals that may be hard to reach and may be hard

13  to understand that.

14      And he did all of that.  And so that is a -- I think, a

15  powerful factor and justification for a sentence that does

16  require a variance.

17      We've already talked about the guideline range that might

18  be more appropriate, but that combined with many of the other

19  factors that we discussed, I think is unique to this case and

20  is one that justifies a significant variance.

21      With respect to general deterrence, which I know is always

22  an issue, as well, he has lived an exemplary life.  He's 66

23  years old.  I'm going to allow Mr. Coffey to talk more about

24  the specifics of this and the ramifications personally for him

25  and his family and many of the things that have led him to

deeply regret this mistake.

But I think one thing that we can be certain of, and I think the Government would agree, is there's not a concern that Mr. Garcia will be back in this situation again before you. That all the factors, all the indicators are that he will not reoffend.

So from a specific deterrence standpoint, I do think that home confinement is sufficient but not greater than necessary to meet that sentencing goal.

And given that and what we've discussed about general deterrence and the nature of the offense at large, I think that a home confinement sentence here would be appropriate.  And it is in line with cases that we could find where we could find information about kickbacks or cases that we thought were analogous.

We set forth eight different cases in which it really was largely home confinement.  In many of those cases, there was not cooperation, but where the bribes were either similar amounts or, in one case where we could find the personal gain was a similar amount, which was the Dubar [phonetic] case, in which we were talking about eight months of home confinement.

So that is the benchmark.  And with that, Your Honor, unless you have additional questions in those specific areas, I would ask that Mr. Coffey be allowed to address some of the personal characteristic issues.

1              **THE COURT:**  Thank you.

2              **MR. COFFEY:**  Thank you, Your Honor, for the

3    opportunity to address the Court.  As you indicated, you read

4    from the materials, and you know this is an American dream

5    story that became a nightmare.  Not just for Mr. Garcia, but

6    for his family, many of whom are here, including his wife

7    Marlena, his brother, his sisters came from Venezuela.  His

8    children, nieces, brothers-in-law, sisters-in-law, the former

9    mayor of Miami Joe Corolla.

10         And they're here not because they want to put faces on the

11   many letters you've received saying this is a really, really

12   good person; he's the patriarch of his family, and he's the

13   bedrock for many in the community, but also because they need

14   him.

15         Despite the incredible adversities of being unemployed and

16   unemployable for the last 14 months, he's continued to provide

17   financial support for those who are otherwise destitute.

18         He is the only source of living for people in Venezuela,

19   for people in this country, and he's basically been doing it by

20   a retirement account that was once over a million dollars, that

21   is now a little bit more than $40,000.

22         He is, of course, radioactive in the corporate world that

23   he once was, and he'll never come back all the way, and we know

24   that.  But he can come back part of the way because he's got

25   strong skills, and he's got an incredible work ethic.  He

1  started supporting a family, his mother's family, when he was
2  12.
3       But you know, if he's incarcerated, on top of everything
4  else that's happened, he's 66, that's just really, really hard
5  to come back.  He's carrying a lot of people on his shoulders,
6  and then it's swimming upstream or up against an almost
7  impossible current.
8       So we don't lightly suggest under these circumstances home
9  confinement, but it's the one path for him to get back enough
10  to continue to support the family.  And this is a man that
11  really, really deserves, I think, judicial compassion because
12  he's lived a life of compassion.
13       As Mr. Ramsey pointed out, there's six or seven out of
14  eight cases that have significant comparability where Courts
15  have given probation or home confinement all representing very,
16  very dramatic departures from the guidelines.
17       Your Honor knows the cases better than anyone, I suspect.
18  Where there's a necessity of caring for family members, there
19  can be very, very dramatic downward departures.  So we believe
20  this is that exceptional case, and this is that exceptional
21  man.
22              **THE COURT:**  The Government, do you want to respond?
23              **MR. REEVES:**  Yes, I just have a brief set of
24  remarks.
25       Your Honor, unfortunately, the counter argument is that

this is a serious offense.  And at the end of the day, this was
a multimillion-dollar scheme to bribe a foreign government in
order to sell software.

You know, that type of crime harms the ability of
law-abiding companies to do business abroad.  It undermines the
interest of the United States and its relations with foreign
governments, and it hurts innocent people in foreign
governments who ultimately pay most of the cost of that kind of
conduct.

So it's for these reasons that the Government does
recommend that the defendant be sentenced to a prison sentence
that would both punish him and deter others from ever engaging
in this type of criminal conduct.  And the Government further
recommends that the Court impose a fine within the guidelines
as recommended in the PSR.

In deciding what sentence to render here, however, the
Government does agree with a lot of the points that Mr. Ramsey
made about Mr. Garcia's cooperation.

And the Government recommended that the Court weigh the
many positive things this defendant has done, both in the
course of his life and in his response to the Government's
investigation.

To the defendant's credit, once he was confronted with the
evidence of his wrongdoing, Mr. Garcia did readily accept
responsibility, he did commit himself to cooperate with the

1   Government's investigation in good faith, and he, in fact,

2   worked quite hard to help the Government understand exactly

3   what happened in a complex fraud.

4        And it is the Government's recommendation that any

5   sentence imposed by the Court please reflect the defendant's

6   willingness to do all of that, and in so doing, encourage other

7   wrongdoers to do the same thing.

8        Thank you.

9        **MR. RAMSEY:**  Your Honor, if I could just add one

10  more thing.

11       **THE COURT:**  Of course.

12       **MR. RAMSEY:**  That really goes to how this started

13  out, that this is something that we believe snowballed.  When

14  Mr. Garcia started in this process of trying to acquire this

15  contract, I think the intention was to do an above-board deal.

16       It then became apparent that there were people who were

17  asking for bribes, and it would be necessary.  And that doesn't

18  justify the conduct, and he doesn't attempt to excuse it in any

19  way, but I think it's at least worth noting it wasn't a

20  situation where he went in intending to do a bribe or to

21  participate in it.

22       He ended up doing that, and then, you know, later

23  distanced himself from those individuals.  So I think that is

24  also a factor which should be considered.

25       **THE COURT:**  Okay.  Mr. Garcia, do you have anything

1   you want to say to the Court?

2                    **THE WITNESS:**  No, Your Honor.

3                    **MR. RAMSEY:**  I've spoken to Mr. Garcia about this,

4   as well, Your Honor, and he obviously has written a letter to

5   the Court.

6                    **THE COURT:**  Well, let me make a few observations.

7   First of all, I'm not sure Mr. Ramsey told you that, as they

8   say, it's important to know the judge as well as to know the

9   law.  And it may be your misfortune to have a judge who

10  believes that for white collar offenders that -- absent

11  anything of a very unusual nature -- that prison is an

12  appropriate disposition.

13      The idea that -- of not imposing a prison sentence, I must

14  say, while I think it would meet the specific deterrence

15  requirement of 3553(a), I don't think it comes close to meeting

16  the general deterrence.  General deterrence is to let people

17  know -- anybody who follows it -- to let people know that if

18  they commit this type of offense, they'll go to jail.

19      And that's an important message to get across.  I'm not

20  personally or professionally or as a Court troubled by that

21  concept because I sentence people all the time for a wide

22  variety of things.

23      And I would say, with respect to the factor that your

24  family will be punished by the fact that you would go to

25  prison, you're absolutely correct.  You're absolutely correct.

1   And it's very unfair to them, and I feel very sorry for them.

2       I understand they didn't create the situation, may not

3   have known about the situation, they didn't encourage you in

4   the situation, require you to do it, they're blameless in this,

5   and yet they're suffering, as well as your friends, people who

6   trusted you and family.  And I would say that situation is true

7   of almost every defendant I see every day.

8       And, you know, the -- the impact of a sentence on a

9   defendant's family is profound, but it's nearly uniform, unless

10  there's a very unusual circumstance.  I don't think they exist

11  here.

12      I think that when the argument with respect to that you

13  are the sole supporter of your family, which I accept, the

14  argument for making it very special, as a special

15  consideration, I think much more applies to the cases in which

16  the mother is taken away from a small child and there's no one

17  to raise the child.

18      And I see that time and time and time again.  Mother has a

19  drug problem, father has disappeared, and she commits crimes,

20  whatever they may be, and she's taken out of the family, and

21  the children are put in a foster care facility.  That's the

22  kind of impact on a family that gives me some pause as to that

23  particular -- that particular argument.

24      I would also -- but there are a number of things that I

25  think are relevant factors here in your favor.  Your

1    cooperation, your willingness to cooperate.  It's not your

2    fault that you cannot bring other people or substantially

3    assist in bringing other people to justice, that's not within

4    your power.  I think you would if you could.  But you can't, so

5    I think the formal 5K1 motion cannot be done by the Government.

6    I understand why they haven't done it.

7         Nevertheless, the fact that you have cooperated is

8    something that I think I'd like to take into consideration and

9    give you the benefit, in the Court's view, as to the length of

10   sentence.  There are, again, some things that are troubling.

11   Obviously, the magnitude of the underlying conduct is

12   significant.

13        Number two is, this wasn't just a one-time occurrence; it

14   was repeated.  It was over some period of time, and there is

15   some repetition of it.

16        There was also certain attempts to conceal it, whatever

17   they may be.

18        All that means is that I think your acts were deliberate,

19   I think they were knowing, I think they were intended to obtain

20   a benefit.  I don't think you fall into the category -- I've

21   seen a lot of Foreign Corrupt Practices Act.  I'm not a great

22   fan of that statute because it makes it very difficult actually

23   for a number of American firms to compete.

24        You know, they go to a foreign jurisdiction, and there's a

25   different way of doing business.  And in order for them to get

1   contracts and so forth, it's hard to know whether something is

2   a fee, a bribe, a charge, whatever it is.

3      So there's not a lot of transparency in -- for companies

4   to do business abroad, and I understand that.  I understand

5   that.  But on the other side is that you actually financially

6   benefited personally from this.  It wasn't just the company,

7   which clearly in the long run, it hasn't worked out well for

8   them.  But you actually got some benefit.

9      So I tried to figure out what is an appropriate sentence

10  here.  I am guided to some extent by average sentences.

11  Frequently, for white collar offenders, an average sentence is

12  somewhere in the neighborhood of 22 months for first-time

13  offenders.  Obviously, every case is different, and you can't

14  just lump them all together.

15     The guideline range, however, is 37 months and

16  recommendation is 42 months.  But then I think that -- number

17  one, I know it's never going to happen again.

18     Number two, I know you've paid a tremendous price.

19     Number three, I know your family and friends have paid and

20  will continue to pay a tremendous price.

21     So all of that suggests to me that a lengthy prison

22  sentence isn't warranted in this particular case.  But I feel

23  weighing all the 3553(a) factors, that a prison sentence is

24  warranted.

25     Accordingly, pursuant to the Sentencing Reform Act of

1   1984, it's the judgment of this court that Vicente Eduardo

2   Garcia is hereby committed to the custody of the Bureau of

3   Prisons to be imprisoned for a term of 22 months.

4       Upon release from imprisonment, the defendant shall be

5   placed on supervised release for a term of three years.  Within

6   72 hours of release from the custody of the Bureau of Prisons,

7   the defendant shall report in person to the probation office in

8   the district to which the defendant is released.

9       While on supervised release, the defendant shall not

10  commit another federal, state or local crime, shall comply with

11  the standard conditions that have been adopted by this Court,

12  except the drug testing provisions are waived.

13      The defendant shall pay any fine or special assessment

14  that is imposed by this judgment and remains unpaid at the

15  commencement of the term of supervised release.

16      Defendant shall provide the probation office with access

17  to any financial information, including tax returns, and shall

18  authorize the probation office to conduct credit checks, obtain

19  copies of income tax returns, I'm not going to put a search

20  condition on.

21      The defendant shall not have any contact with any

22  co-conspirator in this case, namely Richard Martinelli, Aaron

23  Roni Mizrachi, Eduardo Jaen, Carlos Tason, Carlos Bustamante,

24  Mauricio Deveaux and Alejandro Castrejon.

25      The defendant shall not maintain a position of fiduciary

1    capacity without the prior permission of the probation officer.

2         Defendant shall cooperate in the collection of DNA as

3    directed by the probation officer.

4         Defendant shall not own or possess any firearms,

5    ammunition, destructive devices or other dangerous weapons.

6         Further ordered that the defendant shall pay the

7    United States a special assessment of $100, which will be due

8    immediately.  When incarcerated, payment of criminal monetary

9    penalties are due during imprisonment at the rate of not less

10   than $25 per quarter.  Payment should be made through the

11   Bureau of Prisons inmate financial responsibility program.

12   Criminal monetary payments should be made to the clerk,

13   U.S. District Court, 450 Golden Gate Avenue, San Francisco,

14   California 94102.

15        The Court is not going to impose a fine.  And the reason

16   I'm not going to impose a fine is -- the defendant can afford

17   it.  That's not the issue.  The issue is that a fine is just

18   going to punish his family, and I just don't want to punish

19   them any more.  They are very upset by this sentence, and as

20   they should be, and I'm sure you're upset by this sentence.

21   But I just don't want to impose any more of a financial burden

22   on you than you already have.

23        Defendant can voluntarily surrender.  We can put it out

24   90 days until a facility is designated.  Let's pick a day in

25   March.  You are to report to a facility designated by the

1   Bureau of Prisons on or before March 15th, 2016.

2        If one has not been designated, Mr. Garcia, your attorneys

3   will contact me, and I will extend the time for your surrender.

4        I'm very sorry it's come to this.  I really am.  And, you

5   know, I know that it's going to seem like a long time for you

6   and your family, but I actually think that it's going to pass a

7   lot quicker than you think.  So thank you.  We're in recess.

8        **MR. RAMSEY:**  Your Honor, I would ask that we get a

9   recommendation that he be housed in a facility that's close to

10  his home in Miami.

11       **THE COURT:**  Yes, that will be the recommendation.

12  Okay, thank you.

13       **MR. REEVES:**  Thank you, Your Honor.

14       **THE PROBATION OFFICER:**  Thank you, Your Honor.

15       **MR. RAMSEY:**  Thanks.

16                        ---oOo---

1

2

3                   **CERTIFICATE OF REPORTER**

4          I certify that the foregoing is a correct transcript

5    from the record of proceedings in the above-entitled matter.

6

7    DATE:    Saturday, January 2, 2016

8

9

10

11    _____

12          Lori Stokes, CSR No. 12732, RPR
              U.S. Pro Tem Court Reporter

13

14

15

16

17

18

19

20

21

22

23

24

25